**UNITED STATES ex rel. FLAKOWICZ v. ALEXANDER, Warden.**

No. 1914.

District Court, D. Connecticut.

Dec. 4, 1946.

Hayden C. Covington, of Brooklyn, N. Y., for relator.

Adrian W. Maher, U. S. Atty. and T. J. Birmingham, Asst. U. S. Atty., both of Hartford, Conn., for respondent.

SMITH, District Judge.

Petitioner is at present in the custody of the respondent warden on a sentence of imprisonment imposed by the District court for the Eastern District of New York. Petitioner was convicted of a charge of violation of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 301 et seq., for wilful failure to report for induction. The conviction was affirmed on appeal by the Circuit Court of Appeals for the Second Circuit, United States v. Flakowicz, 2 Cir., 146 F.2d 874, and certiorari was denied by the United States Supreme Court on April 30, 1945, 325 U.S. 851, 65 S.Ct. 1086, 89 L.Ed. 1971. The trial court, following the then gener-

ally accepted view of the law as established by the Falbo case, 1944, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305, declined to submit to the jury the claimed arbitrary action of the Selective Service Board in classifying the petitioner 1-A, available for military service. Petitioner claimed that his proper classification was 4-D as a minister of religion entitled to exemption from military training and service under the Act.

Two questions are raised by this case: first, whether the petitioner had exhausted his administrative remedies under the Selective Service Act prior to his refusal to report for induction, and second, the extent of the review available by habeas corpus if the petitioner be held to have exhausted his administrative remedies prior to his refusal to report for induction.

The trial court, in the criminal case, on a motion to quash the indictment, had held that the petitioner had not exhausted his administrative remedies under the Selective Service System since the board still had administrative authority over him even after his certificate of fitness had been mailed to him, permitting in an emergency postponement of the time to report for a period not to exceed sixty days, and since the director and state director of Selective Service had power to control the date of induction specified by the board. However, it would appear that the Court relied upon the then prevalent interpretation of the Falbo case as specifying the compliance with the induction order as the termination of the administrative process before which the legality of the classification could not be challenged.

 In the case at bar, unlike the Smith and Estep cases (1946) 327 U.S. 114, 66 S.Ct. 423, and the Kulick case, 2 Cir., 157 F.2d 811, the petitioner refused to appear at the induction center. In that respect, it is similar to the Falbo case. However, at the time of Falbo's refusal to report, final determination of physical fitness and acceptability to the armed forces was made at the induction center following compliance with the order to report for induction. Subsequent to the Falbo case, however, the Congress required that final determination of physical fitness and accepta-

bility to the armed forces be made upon request prior to the actual reporting for induction to avoid the hardship incident in the uncertainty of the registrant's future entrance into the armed services until time of actual induction. Act of December 5, 1943, c. 342, sec. 5, 57 Stat. 599, 50 U.S.C.A. Appendix, § 304a. It is true that the new requirement of Congress posed some administrative problems and led the Selective Service System to provide for cases in which examination, and determination of fitness, were not followed by induction within a ninety-day period. However, it seems plain that the Congress was attempting, insofar as possible, to provide for the completion of the administrative determination of fitness and acceptability prior to the date of actual induction, and it would seem that in practically all cases the administrative process was actually terminated upon the issuance of the certificate of fitness. No further steps in examination or determination of eligibility were contemplated by the law and regulations in a case such as that of this petitioner, ordered to report within the ninety days following the issuance of the certificate of fitness. It may be that in cases of emergency postponement by the boards or directors of Selective Service, or where the order to report required the registrant to report on a date more than ninety days from the issuance of the certificate of fitness, it should be held that the administrative process had been reopened and steps remained to be taken for a redetermination of fitness and acceptability. That was not, however, this case. The Estep case establishes that submission to induction is unnecessary to enable a registrant to defend against a criminal prosecution for failure to submit to induction on the ground of illegality of classification. At the time of the Falbo case, the completion of the administrative process of determining eligibility and acceptability was had by examination at the induction center on the day of induction. The amendments to the Act and regulations ended the system of final determination of eligibility, and acceptability, at that time and place, and required that it be done at some time prior to the date of induction. The Estep case

made it plain that it is not the formality of the ceremony of induction which is the final step in the administrative process insofar as the determination of eligibility and acceptability is concerned, and it would seem inconsistent with that holding to require the formality of reporting for the sole purpose of the formal induction ceremony to close the administrative process. ·

It is claimed that the language of the note to the Court's opinion in the Estep case, 327 U.S. 114, 123, note 15, 66 S.Ct. 423, demonstrates that the Court classifies the situation in the Flakowicz case before the criminal courts with that in the Falbo case, since it is not listed in the note with those cases overruled by the Estep case.

Yet it is not clear that the effect of the change in the Act and regulations regarding pre-induction examination and certification of acceptability as applied to the facts of Flakowicz's case were brought to the attention of the Court. These facts were a refusal to report for induction March 8, 1944, following examination January 31, 1944, and determination of acceptability, no action having been taken by the boards or state or national directors of Selective Service in the intervening period to reopen the case or postpone the date for the ceremony of induction.

"All had been done which could be done" by Flakowicz. The date of induction had arrived. True, the language of the Falbo and Billings (321 U.S. 542, 64 S.Ct. 737, 88 L.Ed. 917) cases appears to require actual reporting at the induction center. Yet both cases involved registrants ordered to report under the system in force prior to the Congressional provision of pre-induction physical examinations and the amendment to the regulations to conform to the Congressional directive.

█ The United States Supreme Court has not passed directly upon the state of facts presented in Flakowicz's case. We may not consider the denial of certiorari as an affirmance.

Flakowicz had taken every possible step in the administrative process. On the morning of March 8, 1944, nothing had been done by the board or the director of Selective Service to reopen his classification or postpone his induction. The only function to be performed on that morning was submission to induction. Under those circumstances the Court will not require the empty gesture of reporting and refusing in person, instead of refusing by letter, in order to allow a testing of the legality of the classification.

█ The proceedings in two tribunals are attacked in this proceeding by writ of habeas corpus, those of the criminal court and those of the Selective Service board. If I am correct in holding that the administrative process had been completed in Flakowicz's case by the issuance to him of the order to report for induction after determination of his physical fitness and acceptability, and the arrival of the date of induction without a reopening of his case the criminal court was in error in following the then accepted view of the doctrine of the Falbo case and denying him the opportunity to have the jury pass upon the defense of arbitrary classification or classification unsupported by evidence. At the trial of the criminal action, Flakowicz produced sufficient evidence to "Ask the jury to say whether, in the light of all that they have heard, it is not plain that the board did deny him a fair hearing, and did not try to classify him as he deserved". United States ex rel. Kulick v. Kennedy, 2 Cir., 157 F.2d 811, 814. Denial of the opportunity to have the defense considered invalidates the court proceedings and it is unnecessary for this court, on habeas corpus, to proceed further and determine whether the action of the Selective Service board was in fact arbitrary or not founded on evidence.

█ The opinion in the Estep case appears to indicate that even though the defense were not allowed in a criminal case and the criminal court be held to have acted correctly in denying the defense, the "jurisdiction" of the board to classify might still be attacked by habeas corpus after conviction. Jurisdiction appears to have been used here in the broad sense not uncommon in habeas corpus cases. See Judge Learned Hand's review of the availability of habeas corpus in the Kulick case, 157 F.2d 811. Since the Estep case makes it plain that the defense should have been allowed in the criminal case, we do not here

reach the question of review by the habeas corpus court, of the action of the board, since the custody attacked is ended by the invalidation of the criminal judgment.

█ The granting of habeas corpus here by reason of the defect in the criminal trial, brought about by the Estep and Smith decisions, gives the Government the choice whether to re-try the petitioner on the present indictment, with the defense of arbitrary action of the board available to Flakowicz, or to present to the Selective Service board anew the question of the classification of the petitioner under whatever evidence may presently be available.

Petitioner may be discharged from the custody of the respondent warden.

Counsel will submit form of judgment in accordance with this opinion.

Findings of Fact

1. The petitioner, Stanley John Flakowicz, then eighteen years of age, registered under the Selective Training and Service Act of 1940 with Local Board 252 of Forest Hills, New York, December 21, 1942.

2. On his questionnaire, filed January 12, 1943, he claimed exemption as a minister of religion, ordained under direction of the Watchtower Bible and Tract Society.

3. The local board classified the petitioner in 4-D on January 29, 1943.

4. August 31, 1943 the board received an anonymous letter attacking the good faith of petitioner's claim to exemption.

5. September 27, 1943 the petitioner appeared before the board for hearing with reference to his classification. On that date he was reclassified 1-A.

6. October 5, 1943 the local board received a letter signed 'Rose Boulette', stating that Flakowicz was eligible for the draft.

7. October 13, 1943 the petitioner, at his request, was granted a personal appearance before the local board, at which time he filed additional evidence as to his claim for classification in 4-D. The board continued him in 1-A and on October 15, 1943 he filed an appeal together with additional evidence.

8. November 1, 1943 the board of appeal continued his classification in 1-A.

9. November 15, 1943 the petitioner requested the director of Selective Service to review his classification.

10. The director refused to take a Presidential appeal on behalf of the petitioner.

11. January 27, 1944 the petitioner was notified to appear for pre-induction physical examination on January 31, 1944.

12. The petitioner appeared, was examined, and was found acceptable for general military service. He was notified by the board of his acceptance.

13. February 18, 1944 the petitioner again requested relief from the President. The request was referred to the New York City director of Selective Service who again declined to take action.

14. February 25, 1944 the local board notified the petitioner to report for induction on March 8, 1944.

15. March 7, 1944 the petitioner wrote the local board, acknowledging receipt of the order and refused and failed to report for induction on March 8, 1944.

16. The petitioner was indicted by the Grand Jury in the Eastern District of New York for violation of the Selective Training and Service Act of 1940 for refusal to report for induction.

17. A motion to quash the indictment on the ground of illegal classification was denied, the Court holding that the administrative process had not been completed and that the petitioner, not having exhausted his administrative remedies, could not attack the legality of the classification.

18. Evidence which had been produced before the board was introduced at the criminal trial, including petitioner's Selective Service questionnaire, attached statement, certificate of ordination signed by the "Superintendent of Evangelists" of the Watchtower Bible and Tract Society, Inc., record of hearings, statement to the board by petitioner, affidavits of others referring to petitioner's ministerial employment including one purporting to be signed by 74 members of the Society.

The sole evidence to contradict the petitioner's evidence as to his ministerial stat-

us, aside from petitioner's youth, was contained in the two letters referred to in Findings 4 and 6.

19. At the close of the evidence, the petitioner moved for a directed verdict on the same grounds as those set up in the motion to quash. The motion for directed verdict was denied.

20. The trial court refused to submit to the jury requested instructions that the defense of arbitrary and illegal classification by the board was available to the petitioner in the criminal trial. Exception was taken to the refusal of the instructions by the trial court.

21. The petitioner was convicted on trial to the jury, and sentenced to imprisonment.

22. The petitioner appealed from the judgment of conviction and on January 22, 1945 the Circuit Court of Appeals for the Second Circuit affirmed the judgment of the trial court.

23. The United States Supreme Court denied certiorari on April 30, 1945.

24. The petitioner entered upon the service of his sentence of imprisonment in May, 1945.

25. The petitioner is at present confined in the custody of the respondent Alexander, Warden of the Federal Correctional Institution at Danbury, Connecticut, in this District, pursuant to the judgment of conviction by the United States District Court for the Eastern District of New York referred to in paragraph 21 above.

### Conclusions of Law

1. The court has jurisdiction over the parties and over the subject matter of this action.

2. The petitioner had, on March 8, 1944, exhausted his administrative remedies under the Selective Training and Service Act of 1940 as amended.

3. Having exhausted his administrative remedies under the Act, the petitioner was entitled to challenge the legality of his classification as a defense to criminal prosecution for refusal to obey the order to report for induction.

4. The petitioner was entitled to have submitted to the jury the defense of arbitrary and illegal classification by the board, upon the evidence which had been produced at the trial of the criminal prosecution in the United States District Court for the Eastern District of New York.

5. The refusal to submit to the jury the requested instructions was a lack of due process sufficient to invalidate the judgment of the Court and the commitment under which the petitioner is held in the custody of the respondent warden.

6. The judgment being invalid for error in the trial, the indictment remains pending against the petitioner.